-PSO-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JONATHAN ODOM, 92-T-0387,

                    Plaintiff,

            -v-                                          DECISION AND ORDER
                                                         04-CV-0889A(F)

THOMAS DIXON, DON LOPES, JEFF
SEKUTERSKI, C. JABCUGA, C. PETTIES,
SGT. MARKOWSKI AND JOHN DOE, et al.,

                    Defendants.

## INTRODUCTION

Plaintiff Jonathan Odom, an inmate of the Wende Correctional Facility, has filed this

*pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1).  Plaintiff paid the filing

fee after his request to proceed *in forma pauperis* was denied pursuant to the three

"strikes" rule of 28 U.S.C. § 1983 (Docket No. 4).[1]  Plaintiff has requested that the Court

direct the U.S. Marshal to serve the summons and complaint upon the defendants.

(Docket No. 8).

---

[1]Plaintiff has a well-documented penchant for inundating the courts with frivolous lawsuits . *See, e.g.
Odom v. Sielaff,* 90 Civ. 7659, 1996 U.S. Dist. LEXIS 5792, at *4 and n.1 (S.D.N.Y. 1996) (in denying Odom's
application for appointment of counsel in a suit filed against prison officials pursuant to 42 U.S.C. § 1983, the
Court cited the large number of such suits filed by him: "The tendency of Mr. Odom to bring meritless actions
before this Court is suggested by the twenty-nine actions he has filed in this District, at least fifteen of which
have been  dismissed sua sponte."); *Odom v. Sielaff,* CV-92-0571, 1995 U.S. Dist. LEXIS 22201, at *1, n.1
(E.D.N.Y. 1995) (""Based on a review of court records, Odom has filed at least 32 lawsuits in the Eastern
and Southern Districts of New York alleging various constitutional violations with respect to his incarceration
since 1990.").  As noted in this Court's previous Order in this matter,  plaintiff was barred from filing any new
actions *in forma pauperis* under the three "strikes" rule of 28 U.S.C. 1915(g) by 1996.  (Docket No. 4, n.1).
Consistent with the pleading practices of "frequent filers," like himself, plaintiff tends to implead every prison
official he has any contact with, and to employ the "everything but the kitchen sink" approach in drafting his
claims. *See, e.g. Odom v. Poirer,* 99 Civ. 4933, 2004 U.S. Dist. LEXIS 25059 (S.D.N.Y. 2004) (dismissing
all of Odom's numerous claims against 80 defendants).

Plaintiff's complaint claims that defendants, supervisory and non-supervisory employees of the New York State Department of Correctional Services ("DOCS") at Attica Correctional Facility ("Attica"), where plaintiff was previously incarcerated, violated his constitutional rights by denying him access to the properly prepared kosher meals mandated by his religious beliefs, and by harassing and retaliating against him when he filed grievances with respect to the alleged denial of such meals. Plaintiff asserts that he exhausted state remedies by filing two grievances pursuant to the Inmate Grievance Program administered by DOCS; a letter submitted by plaintiff after the filing of his complaint attaches copies of the Attica Superintendent's denial of his grievances.

Section 1915A(a) of 28 U.S.C. requires the Court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915, and under § 1915A the Court must dismiss a claim or the action "if the Court determines that ... (b) the action ... (1) is frivolous, malicious or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a Defendant who is immune from such relief." *Id.* Plaintiff, who has now paid the filing fee in full, does seek redress from a governmental entity *or* officer and/or employee of a governmental entity and his complaint therefore is subject to the initial review of the Court.

In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff

2

can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the Complaint, the Court finds that several of Plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915A(b) because they fail to state a claim upon which relief may be granted.

### Plaintiff's Allegations

The gravamen of plaintiff's complaint concerns his food: how it was prepared and served to him, and where and how he was permitted to eat it. Plaintiff alleges that his Free Exercise and Equal Protection Clause rights under the First and Fourteenth Amendments were violated by the actions of various defendants in refusing to provide him with the means to open his hermetically sealed kosher food packs and hot water for his instant oatmeal and Sanka, in having a non-Jewish Muslim prisoner prepare his kosher food (in violation of the Jewish laws of kashrut)[2], in depriving him of special foods during Yom Kippur, and in refusing to allow him to take his food back to his cell, unlike other prisoners

---

[2]"Kashrut" is the Hebrew noun from which the more familiar term "kosher" is derived, and "encompasses the entire body of rules that may be consumed as well as the preparation of such foods." *Commack Self-Service Kosher Meats, Inc. v. Weiss,* 294 F.3d 415, 418 (2d. Cir. 2002), *cert. denied,* 537 U.S. 2003.

3

who consume regular prison fare, and who are permitted to so transport their food. (Complaint, First Cause of Action).

Plaintiff further alleges that prison officials and employees committed a number of acts of retaliation against him, in violation of his First and Eighth Amendment rights, after he sought to vindicate his First Amendment Free Exercise clause rights by filing grievances with respect to the alleged refusal to provide him with kosher meals. He asserts that the retaliatory actions to which he was subjected included: the denial of kosher meals; being threatened with bodily harm if he did not drop his grievances; and being assaulted by prison officials, as a result of which he sustained injuries from which he continues to suffer. (Complaint , Second Cause of Action). Plaintiff is seeking declaratory and injunctive relief, as well as monetary damages.

## DISCUSSION

### 1.  Free Exercise of Religion Claims

It is a well established principle in our Circuit that "to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuiniss,* 357 F.3d 197, 203 (2d Cir. 2004); *see also Ford v. McGinnis,* 352 F.3d 582, 597 (2d Cir. 2003) (holding that prisoners have a right "to a diet consistent with [their] religious scruples). In *McEachin,* the Second Circuit indicated that the First Amendment "protects inmates' free exercise rights even when the infringement results from the imposition of legitimate disciplinary measures." *McEachin,* 357 F.3d at 204.

4

In the face of the relevant authority cited above, the Court finds that the allegations set forth in the plaintiff's complaint concerning the ways in which he was deprived of kosher meals are sufficiently detailed to allow his Free Exercise Clause claims to proceed against defendants Dixon, Lopes, and Jabcuga.  *See* Complaint ¶¶ 17– 20,  22.

However, plaintiff's claims that defendants Sekuterski, Petties, Markowski and Doe similarly violated his Free Exercise Clause rights must be dismissed because they are set forth in conclusory terms and do not identify or allege with sufficient specificity what these defendants did to interfere with his ability to partake of kosher meals. *See, e.g. Snyder v. McGinnis,* 03-CV-0902E, 2004 U.S. Dist. LEXIS 17976 (W.D.N.Y. 2004) (dismissing several § 1983 claims against prison officials where inmate's allegations were determined to be conclusory in nature); *Paredes v. N.Y. State Dep't of Corr. Servs.,* 04-CV-0293E, 2004 U.S. Dist. LEXIS 18245 (W.D.N.Y. 2004) (same).  While plaintiff's claims against defendants Dixon, Lopes, and to a lesser extent Jabcuga,  contain *specific* allegations of what those three individuals did – or didn't do – on specific occasions,[3] his claims against the other defendants lack a comparable degree of specificity, and are asserted in the paragraphs of his complaint in which he levels conclusory, omnibus-type charges against several or all defendants, e.g. his non-specific claim that all the defendants discriminated

---

[3]E.g. that defendant Lopes "never sent plaintiff his religious diet breakfast . . . nor his religious diet dinner" on 6 specific dates in October, 2004; that Lopes and Dixon had a Muslim inmate prepare certain specified foods for plaintiff, in violation of the laws of kashrut.  Complaint ¶¶ 18, 22.

against *all* religious diet prisoners.[4]  Complaint ¶16.

### 2. Religious Freedom Restoration Act Claim

Plaintiff's complaint also claims that the actions taken by the defendants to deprive him of kosher food impaired his ability to freely exercise his religious beliefs under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb et seq.  The RFRA was declared unconstitutional by the Supreme Court as applied to the states in *City of Boerne v. Flores,* 521 U.S. 507 (1997).   However, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") was intended as a replacement for the RFRA, *see, e.g., Madison v. Riter,* 355 F.3d 310, 315 (4th Cir. 2003)[5], and the Second Circuit indicated in *McEachin* that where factual allegations in a prisoner's complaint might support a claim under the RLUIPA, the complaint should be construed as asserting such a claim. *McEachin,* 357 F.3d at 199 n. 2 and 205.

In relevant part the RLUIPA "prohibits the imposition by any government of a 'substantial burden on the religious exercise' of a prisoner, unless the government can show that such imposition is the least restrictive means of furthering a compelling government interest." *Figel v. Overton,* 121 Fed. Appx. 642, 2005 U.S. Dist. LEXIS 1910 (6th Cir. 2005), at **11 (citing 42 U.S.C. § 2000cc-1(a)).  Construing plaintiff's complaint as

---

[4] As previously noted (see footnote 1 *supra*), Odom has filed dozens of civil right actions in the federal courts in New York, and the frequent dismissals of those actions have certainly served to make it clear to him that conclusory allegations will be dismissed by the courts on the pleadings alone.  *See, e.g., Odom v. Poirer,* 99 Civ. 4933, 2004 U.S. Dist. LEXIS 25059 (S.D.N.Y. 2004), at *19-20.  While the complaint does level one or two specific free exercise charges against the other defendants, plaintiff's allegations (that they failed to send him his food trays on a couple occasions) are too minor and vague to warrant allowing them to proceed.

[5] The constitutionality of the RLUIPA under the Establishment Clause of the First Amendment is at issue in a case currently pending before the Supreme Court. *See Cutter v. Wilkinson,* cert. granted, 125 S. Ct. 308, 160 L. Ed. 2d 221 (2004) (argued March 21, 2005).

asserting a claim under the RLUIPA, and having in mind the liberal pleading rules that must be applied to a *pro se* plaintiff, the Court is unable to say that plaintiff will be unable to establish that the denial of properly prepared and served kosher meals did not impose a substantial burden on his ability to exercise his religious rights. The Court will thus permit his claim under the RLUIPA to move forward with respect to defendants Dixon, Lopes, and Jabcuga.

### 3. Equal Protection Claims

Plaintiff asserts that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when prison officials denied him the right to take his kosher food allotments back to his cell, while at the same time permitting the general prison population to do so. The Equal Protection Clause requires that all persons similarly situated be treated by the State in the same manner. *See Allen v. Coughlin*, 100 F.3d 253, 260 (2d Cir. 1996). To prove an equal protection violation, a plaintiff must show "purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citations omitted). The Supreme Court has determined that a lower level of scrutiny is applied to equal protection challenges to prison rules and regulations. *See Turner v. Safley*, 482 U.S. 78, 81 (1987); *Allen*, 100 F.3d at 261.

The Court notes that grievance determinations included by the plaintiff among the materials he has filed with the Clerk's office would appear to contradict his assertion that he was denied privileges extended to inmates who did not require kosher food.[6] However,

---

[6]The Decision in Grievance # A-47428-4 issued by the Superintendent at Attica states, in part, "You will be allowed to take the same [food] items out of the messhall as any other general population inmate." Similarly, the Decision in Grievance # A-47427-04 states: "You may take the same items back from your meal as any other general population inmate...."

inasmuch as the Court cannot conclude that it is beyond doubt that plaintiff can prove no set of facts that would entitle him to relief under his Equal Protection Clause claims, the Court will permit those claim to go forward against defendants Dixon, Lopes and Jabcuga.

### 4. Retaliation Claims

Plaintiff alleges that following a disciplinary hearing conducted on October 11, 2004 (apparently stemming from an incident on September 30, 2004 in which plaintiff destroyed some food in protest of the failure to properly serve him kosher food), the defendants retaliated against him in various ways. While his allegations with respect to alleged acts of retaliation are lacking in terms of dates and other specifics, the basic theme is that the defendants threatened him and assaulted him. Complaint, ¶¶ 31, 33–37.

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) (internal quotation and citation omitted). As to the second prong of this test, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon*, 58 F.3d at 872-73.

8

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon*, 58 F.3d at 872, requiring "'detailed fact pleading . . . to withstand a motion to dismiss.'" *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (quoting *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981)). To survive a motion to dismiss, such claims must be "'supported by specific and detailed factual allegations,'" and should not be stated "'in wholly conclusory terms.'" *Friedl*, 210 F.3d at 85-86 (quoting *Flaherty*, 713 F.2d at 13); *see also Graham*, 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (cited with approval in *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (on remand, district court to consider the "serious question" of "whether the alleged acts of retaliation . . . were more than *de minimis*" in deciding summary judgment motion). A *de minimis* retaliatory act is outside the ambit of constitutional protection. *Dawes*, 239 F.3d at 492.

Plaintiff claims that he was threatened by defendants Dixon, Petties, and Makowski following the filing of the grievance described above. It is well settled that verbal threats or abuse are insufficient to support an action under § 1983 unless accompanied by physical force or the present ability to effectuate a threat. *Jermosen v. Coughlin*, 878 F.

9

Supp. 444, 449 (N.D.N.Y. 1995). A liberal construction of plaintiff's second cause of action indicates that plaintiff alleges that defendants Dixon and Markowski encouraged or incited other corrections officers to use used physical force on plaintiff in conjunction with their alleged threats, and thus plaintiff's claims of retaliation against them based upon such threats can proceed. In the case of defendant Petties, plaintiff alleges that Petties actually assaulted him as a "warning" to drop his grievances, and the Court will thus allow plaintiff's retaliation-by-threat claim against Petties to proceed as well.

The retaliation claim against defendant Petties further alleges that Petties assaulted plaintiff to make him drop his grievances, and this claim may likewise go forward. The retaliation-by-assault claim against defendants Dixon and Markowski is a closer call, inasmuch as plaintiff does not allege that Dixon and Markowski actually participated in an assault on him; instead plaintiff claims that they "directed," "supervised," and "ordered" the retaliatory assault upon him. Moreover, plaintiff provides no specifics in terms of how and when they allegedly directed the assault upon him. Notwithstanding the "bare bones" and rather conclusory nature of the allegations against Dixon and Markowski, "they cannot be dismissed at this stage of the litigation because the Court cannot say that 'it appears beyond doubt that plaintiff can prove no set of facts in support of his [retaliation] claim[s] which would entitle him to relief.'" *Paredes v. N.Y. State Dept Corr. Servs.*, 04-CV-0293E, 2004 U.S. Dist. LEXIS 18245 (W.D.N.Y. 2004), at *8 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

5. Eighth Amendment Claims.

Plaintiff also invokes the Eighth Amendment in connection with his claims that prison officials interfered with his ability to exercise his religious beliefs, and assaulted him in

10

retaliation for his having filed grievances with respect to their alleged denial of kosher meals.

With respect to plaintiff's claim that the refusal by prison officials to comply with his religious dietary requirements, the relevant standard under the Eighth Amendment with respect to diet "require[s] that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied* 450 U.S. 1041 (1981). While the allegations in plaintiff's complaint that prison officials' failure to comply with kosher requirements are sufficient to allow his free exercise claims to proceed, those allegations do not provide an adequate basis to find that the food he was provided presented any serious danger to his health and well-being. A careful reading of the complaint shows that plaintiff was provided with many of the essential components of a kosher meal; the fact that prison officials allegedly refused to allow him to take portions of his food back to his cell does not demonstrate that they failed to provide him with adequate nutrition. Accordingly, Plaintiff's Eighth Amendment claims premised upon the denial of a kosher diet must be dismissed.

However, Plaintiff's Eighth Amendment claims based upon the alleged assault upon him by defendants Dixon, Markowski, and Petties will be allowed to proceed. The allegations of excessive force set forth in the complaint, including the resulting injuries plaintiff claims to have suffered, are sufficient to state an excessive force claim. *See Snyder v. McGinnis,* 03-CV-0902E, 2004 U.S. Dist. LEXIS 17976 (W.D.N.Y. 2004), at *16.

11

### 6. Conspiracy claims

In addition to asserting claims under § 1983, plaintiff's complaint also invokes 42 U.S.C § 1985, the conspiracy provision of the civil rights statute. To state a cause of action under § 1985, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities,* 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing *United Brotherhood of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828-29 (1983)), *cert. denied,* 516 U.S. 824 (1995). The conspiracy must be motivated by racial or related class-based discriminatory animus. *Local 610,* 463 U.S. at 835-37; *Mian,* 7 F.3d at 1088.

The Second Circuit has repeatedly held that, in order to state a claim of conspiracy under § 1985, the complaint must contain more than mere conclusory allegations; instead, plaintiff must allege facts sufficient to establish an agreement among two or more persons, or "a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful ends." *Webb v Goord,* 340 F.3d 105, 110 (2d Cir. 2003); *see also, Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.), *cert. denied,* 506 U.S. 819 (1992); *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir. 1988); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977) (per curiam); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck,* 463 F.2d 620, 622-23 (2d Cir. 1972), *cert. denied,* 410 U.S. 944 (1973). Given this requirement, while a plaintiff "is not required to put forth evidence, the complaint must contain details of the conspiracy, such as the time and place of the

conspiracy, or specific instances of misconduct." *Muhammad v. Coughlin,* 93-CV-968, 1998 U.S. Dist. LEXIS 20762 (W.D.N.Y. 1998), (Magistrate's Report and Recommendation, adopted at 1998 U.S. Dist. LEXIS 20760) (dismissal of § 1983 suit by inmates challenging alleged deprivation of access to kosher food). Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights may properly be dismissed; "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer, supra*; *Salahuddin, supra*.

In the instant matter, plaintiff's complaint does not allege, except in the most conclusory and rote fashion,[7] that any such "meeting of the minds" occurred among any or all the defendants. His conspiracy allegations must therefore be dismissed in their entirety. *See Webb,* 340 F.3d at 111 (citing *Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir. 1997)); *Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir. 1999).

### 7. Application for Order of Service

Plaintiff has requested an Order of the court, pursuant to Fed.R.Civ.P. 4(c)(2), directing the U.S. Marshal for the Western District of New York to serve the summons and complaint upon the defendants.[8] (Docket No. 8). Plaintiff's request is granted. Plaintiff is advised that it is his responsibility to pay the service fee to the U.S. Marshal before the

---

[7]By "rote," the Court means the frequent boilerplate-type allegations set forth in the complaint that two or more of the defendants "acted alone and/or in conjunction with other named defendants and in furtherance of their acts" to violate plaintiff's rights. *See, e.g.* paragraphs 15, 16, 21, 33, 35 of the Complaint.

[8]By letter dated May 16, 2005, plaintiff has also requested permission to amend his complaint in this matter. As plaintiff has previously been advised, he may amend his complaint without the Court's leave before the complaint has been served and entered.

complaint will be served for him. **This fee is $8.00 per summons and complaint** and must be paid by money order or certified check because the U.S. Marshal will not accept cash or personal checks for service. Plaintiff must also provide the U.S. Marshals with all necessary papers for service, including completed U.S. Marshals Forms and summons forms (both of which may be obtained from the Office of the Clerk of the Court).

Plaintiff is also advised that while the U.S. Marshal will make every effort to serve the summons and complaint in a speedy fashion, it is his responsibility to be aware of the deadline for service. If service has not been accomplished by the time that deadline is approaching, it is plaintiff's responsibility to follow up with the U.S. Marshal's office at (716) 551-4851 to ensure timely service.

Upon receipt of the certified copy of this order, plaintiff shall be required to submit a copy of this order, the completed U.S. Marshal forms, the completed summons forms, and the complaint to the U.S. Marshal for service upon named defendants.

## CONCLUSION

For the reasons discussed above, the Court determines that:

All claims against defendants Sekuterski and John Doe are dismissed with prejudice.

Plaintiff's First Amendment/Free Exercise of Religion, RLUIPA, and Fourteenth Amendment Equal Protection claims survive as to defendants Dixon, Lopes, and Jabcuga.

Plaintiff's First Amendment retaliation claims survive as to defendants Dixon, Markowski, and Petties.

Plaintiff's Eighth Amendment excessive force claims survive as to defendants Dixon, Markowski, and Petties.

14

All claims against the defendants, whether asserted under § 1983, § 1985, the RFRA or the RLUIPA, other than the claims addressed above, are dismissed with prejudice.

Plaintiff's request for an Order directing the U.S. Marshal for the Western District of New York to serve the summons and complaint upon defendants is granted.

## ORDER

IT IS HEREBY ORDERED, that plaintiff's claims against defendants Sekuterski and John Doe are dismissed with prejudice;

FURTHER, that the Clerk of the Court is ordered to terminate as parties to this action defendants Sekuterski and John Doe;

FURTHER, upon receipt of a copy of this Order, plaintiff is required to submit the certified copy, marshal forms, summons and complaint to the U.S. Marshal for the Western District of New York for service upon defendants Dixon, Lopes, Jabcuga, Markowski and Petties.

FURTHER, Pursuant to Fed.R.Civ.P. 4(c)(2), the U.S. Marshal is hereby directed to collect the service fee from plaintiff, and upon its receipt serve the Summons and Complaint upon defendants Dixon, Lopes, Jabcuga, Markowski and Petties.

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the Defendants are directed to answer the Complaint.


SO ORDERED.

Dated:        MAY 23        , 2005
              Rochester, New York

                              *Charles Siragusa*
                              CHARLES J. SIRAGUSA
                              United States District Judge